5-18-0-5-6-5 Den-Tex Central, Inc v. The Workers' Compensation Commission Thank you, Judge, and may it please the court that my name is Bill Lepidini. I represent the incumbent, Den-Tex Central, Inc. human business. Your Honors, it is our position as a member of the Workers' Compensation Commission that the decision finding an accident arising out of the employee's employment is against the manifest way of an accident. Now, generally speaking, the question of whether or not an accident is presentable is a question of fact, and this court will only consider the Commission's decision on whether, only if, the opposite conceded is apparent. The main facts in this case are not to be disputed. This person working at Denny's that was inside of the Flying J Travel Center. Denny's did not have its own restroom, and employees and patrons of Denny's used the restrooms in the Flying J Travel Center. Flying J had two bathrooms. Both were open to the general public and also available to employees of Denny's. So she goes into the stall and the scroll of toilet paper hits her in the head. Here's my question. The case was analyzed by the Commission under the neutral risk theory. I mean, everybody's all in on neutral risk. Would the personal comfort doctrine have any applicability to this case either way? Your Honor, in one way it would, and that is one of the factors in determining whether or not it is in the course of employment. So we're not disputing that the accident itself happened in the course of employment. But that second factor is what I'm disputing, and I don't believe that the person... Let me ask you a question. Assuming everybody concedes it occurred in the course of, because it was part of, because of the personal comfort doctrine. If an employer has a washroom that's open to the employees and the employees, and there's a defect in the floor of that washroom, an employee walks into that washroom, trips on the defect, and is hurt, would you analyze that under neutral risk? Or would you analyze that as an employment problem under a rising outlet? Judge, if I understand the fact that you're saying that there's a bathroom that's open to both patrons and the general public and employees... And there's a crack in the floor. I believe that that would still be analyzed as to the neutral risk. Why? Because the question in that case... It's a defect on the employer's premises. There's a question of that if it's open to the general public, if there's a greater risk created to the employee by that defect. If there's a defect in the floor of Walmart and one of their employees trips on it and hurts themselves, that's not going to be analyzed under neutral risk. Your Honor, I... It's going to be an employment defect. Your Honor, I don't know if I agree with that assertion. You don't have to, but it's a fact. It's the law. It's the doctrine. What I'm saying is I think that would certainly be something that would be considered under whether or not qualitatively there's a risk in the general public to find that defect. In this case, however, they look like they're talking about... That's not quite true. That's not quite true. They got a bathroom with a 10-pound roll of toilet paper sitting on top of a stalled door to the wall, according to these facts. And if the injury occurred in the course of... And that is a defective condition in the place for personal comfort. I think an argument could be made that this is not a neutral risk analysis. This is an analysis under whether it's an employment-related deficiency in the premises. Now the question becomes, is it different because it's not the employer's premises? Your Honor, I think that it's certainly important to consider as well if this goes on premises in a situation where the employer then is not in control of the... Well, your personal comfort cases all say that it's on the employer's premises. I've not found a single personal comfort case when it was off the employer's premises. This is kind of a weird thing. Denny's didn't have its own restaurant. And, Judge, I would certainly direct your attention to the owner of that telephone company versus the military commission case, which I think, although it is not exact to the fact that I'm looking at, it's very similar. In that situation, we had an employer whose office was on the second floor of a mall. And in order to exit that mall, we had to leave the office and go to one of many exits that were available. And in that case, the employer didn't direct the employees to go to any certain exit. The exits were controlled by a third-party landlord. The employer did not have any control over maintaining those exits. And in the process of leaving the premises, this employee slipped and fell and died of injury. And in that case, the court found that that was not a compensable accident because of the fact that there was a lack of control by the employer and a lack of right to control and maintain and interfere with the landlord's duty on the off of the exits. They also consider the fact that there are multiple exits that this individual could use to welcome to the general public with no direction as to which one to use and which one not to use. Similarly, in this case, we have a situation where we have a dentist inside or outside of the Denver Tribal Center. There's no bathroom inside the dentist, and therefore, the employees and patrons of the dentist leave to go to the Tribal Center within the same building, within the same compound, to use a bathroom that is outside of control of the dentist. Similarly, the dentist did not direct which bathroom and multiple bathrooms to use, when to use it, did not require permission to use the bathroom. There was no evidence that the dentist at all had any intention of directing where to go and his bathroom to open to the general public. So let me ask you this. As you know, the increased risk could be either qualitative or quantitative. So in terms of qualitative, it generally is considered whether the injury or the increased risk would be the result of some aspect of the employment. So the commission determined that the claimant's employment increased the risk of injury qualitatively because the respondent's failure to provide bathroom facilities for its employees, forcing the claimant to leave the place of employment and go off-site, was an employment risk. Why would that not be considered an employment risk? Your Honor, again, I would direct you to the very similar facts in the Illinois Bell Telephone Company case. That was a similar situation where the employer did not provide any sort of outside exit from the offices directly outside of the mall. Therefore, in order to exit the offices, that employee had to go off-premises onto an area that was out of control of the employer. Similarly here, we believe that the commission erred in their decision in the fact that, like Illinois Bell Telephone Company, although there was not a bathroom in Denny's, the bathroom was off-premises and Denny's didn't have control over it. So if we apply the same logic that the court applied in that case, then the question isn't necessarily why it's not an employer problem. The question is still the greater risk analysis. And in that case, the court clearly stated that there was no greater risk created to this employee because of the fact that the employer had no control over this area that was open to the general public. Furthermore, like I said, although the situation, the specific situation of the toilet paper roll falling on top of this employee's head is certainly unique. And there is no case that you pointed out directly on the court. Well, I wasn't looking for cases where toilet paper fell on somebody's head. I was looking for cases where personal comfort was conducted off the employer's premises. All the personal comfort cases seem to say it's personal comfort on the employer's premises. And we've got all sorts of crazy cases. Coke machines falling on people, Frisbee injuries that are compensable. But the fact of the matter is this occurred off the premises. So if it occurs off the premises in a place where the employer has no control, is the personal comfort doctrine even applicable? I think the personal comfort doctrine, in terms of applying it to whether or not it was a force of the employer, is applicable. However, when applying the fact of a rising out, if I do have to read, really has nothing to do with it. Well, the personal comfort doctrine has nothing to do with a rising out. So the personal comfort doctrine, if it applies at all, has to apply in the course of it. So does off-premises qualify for the personal comfort doctrine? The answer to that is no. They were wrong about finding it in the course of it. So that's the question that nobody seems to want to address. Can it be off-premises, personal comfort? Your Honor, in terms of our dispute in this case, obviously, we have concentrated on the question of whether or not there was an off-premise. Well, I know what you're concentrating on. And in terms of what I think that our position on that question that you gave is that because the general situation that we're talking about, where you can have an employer that is leasing space within the confines of a first-party owner's property, whether it's a mall or whether it's a hair salon or a Wal-Mart, that may not offer certain amenities like restrooms and those restrooms being shared with the landlord of the property. I do think that the personal comfort doctrine probably does apply in terms of whether or not the accident was in the course of it. But our issue with the commission's decision here has to do with whether or not it was. Because the question still is as to the amount of control. And our client certainly had no control over the commission. Second of all, it was open to the general public. And so the question that comes with this particular thing, whether the employee placed at a greater risk of getting injured in this situation. And the fact that this is a peculiar set of circumstances in which Westfield, well before it fell from a stall where it normally isn't, I think there should be heightened scrutiny as to whether or not there was greater risk. And I think in a certain way, we need to compare the Keith and the Brady cases and look at that for some guidance in terms of how to handle this situation. Before I do that, let me ask you this. Was there ever any testimony in arbitration about whether or not that roll of toilet paper was left up there accidentally? It was commonly placed there. Somebody just forgot and left it there. Any testimony as to how it came to be in that stall? Specifically, I don't know if there was any, well, let me put it this way. There was certainly testimony saying that as far as what Ms. Pearson had experienced and the other employees that testified, they had not experienced that roll of toilet paper being left there. There was testimony that stated that the roll of toilet paper is usually in the dispenser. Now, as to the motives of why it was up there, whether it was done by mistake, whether it was a prank, I don't know that there was any direct testimony as to whether or not that was placed there intentionally, unintentionally, not due to anything that I mentioned. But there was certainly clear testimony that that is not normally where the roll of toilet paper would be placed. And that fact itself kind of lends to the situation where we've got to look at this in a little bit more detail and place a little bit more scrutiny to it, just because it is a peculiar set of circumstances that wouldn't commonly be faced by even the general public in that situation. So if we look at the Brady and Leak cases, in Brady, we have a store clerk who's shot after hours after the store closed. And the court in that case – or, I'm sorry, that's the Heath case. The court in that case stated that no – the benefits were denied, that no influence could be made, that the working environment itself increased the risk of being shot. Similarly, in Brady, a car drove through a worker's building, injuring the worker. And the court found that members of the general public outside of the employer's building were equally exposed to that hazard of being struck by the vehicle. A commonality between both cases is the fact that being hit by a bullet, being hit by a car that runs through a building, a pretty peculiar set of circumstances. In this case, the toilet paper being placed in an area which it normally has not been placed, falling on top of this employee is also a very unique and peculiar set of circumstances. So the question then becomes whether or not she was at a greater risk of that peculiar circumstance as she returned. And I – and we certainly contend that she was not. Just by the fact that this area was open to the general public, we did not – our client did not direct which stall to use. There were multiple bathrooms to use, and there was no direction as to which bathroom to use, when to use it, when break time should be. And therefore, Your Honors, I think the question then becomes whether or not there really was a greater risk. And I think qualitatively and quantitatively there were. The court also contended that quantitatively there was a greater risk in that, just by the fact that she worked at a business without a bathroom, that she would no doubt have visited those facilities in question more often than the general public. Your Honor, certainly the Commission can make inferences, but those inferences should still be based on some of the evidence. And certainly there was no evidence that was presented in which there was any testimony as to her needing to use the bathroom frequently, how long her shifts were, how many times a shift she went to the restroom, and why she used that particular restroom as opposed to another one. But even if we say that that inference is proper, the Commission's decision would still be against the manifesto of the evidence, just based on the reasoning that was done in the new-kid's version versus only the work-as-compensation case. And in that case, including the shift on what pavement in the parking lot while outside, she argued that she was quantitatively at greater risk than the general public, because she was in the parking lot more often than the general public. And the court rejected that argument at that time, saying that even if she were to use that parking lot twice as often than the general public, there's no evidence that she was exposed to a greater degree or greater danger of what pavement than the general public. Okay. So, Your Honor, if I may, those are the reasons why we pretend that no one else has anything to say. You'll have five minutes in reply. Counselor, you may respond. Thank you, Your Honor. Good afternoon. May it please the Court. My name is Brigitte. I'm the fellowship representative in this case. Your Honor, this is an interest-related evidence case, and we know that when that's the case, the court has told us that the inferences only can be subject to one single inference. The facts have to be subject to only one single inference. So in this instance, in this particular case, we had a couple of witnesses who testified. My client testified, and then one of her co-workers testified. And her supervisor also testified. So I think one of the facts that— Let's get to the issue. Okay. What makes this a recoverable neutral risk based on qualitative difference from the general public? What's qualitatively different? Qualitatively, Your Honor, is because of the fact that her employer did not have a bathroom. How's that qualitatively different than a member of the general public using the bathroom? Because most people, where they work, they have a restroom that they can go to on the counter. That's not qualitative difference. Qualitative difference is there's a crack in the floor. There's something defective about the premises that they're going into. And quantitatively different, I'm at a loss to understand that one, too. Okay. I would say also, in addition to that, that the area was extremely high-traffic, which is what I was going to mention about the testimony of my client and Ms. Costney, who both testified that those restrooms were high-traffic areas. So I think that that's also what the commission concluded, is that those constituted qualitative risks that the general public— How does high traffic make the risk qualitative? I'm sorry? How does high traffic make it qualitative, the risk? Does it make it qualitative? It increases the potential for more hazards to be present. If you have more people using the restrooms, potentially things could go wrong. The restrooms may have the tendency of being— So now I'll ask the question, how does that differentiate her from the general public? Because she's required to be there. She's not required to be there. She has to use that restroom. She has to use either that restroom or the other restroom that Flying J operates, which would also presumably be in the same or similar conditions. Where would the general public use a restroom? They're free to come and go as they please. They're free to use those restrooms or leave and go somewhere else. She works at that particular building. She's not free to come and go because she's a waitress and she works on tips. So she needs to be able— So if there's a defect in the restroom, then it's not analyzed under neutral risk theory. It's analyzed under a risk attendant to the employment. I think the distinction, Your Honor, is that I think you're absolutely correct that if this were the employer's premises, then that would be a risk associated with her employment distinctly. But I think that's where the commission is coming from is because this is off-premises. This is not on Denny's property. Well, aren't you really arguing a concept of constructive employee's premises here when you're saying she can't leave her work. She has to, for personal comfort, use a restroom. And this restroom, though used by the public and is a public facility, is the only restroom facilities that she can use for personal comfort. And they've imposed a constructive employer's premises analysis on this? I've never heard that. No, you haven't. I just came up with it. Yeah, I was going to say, that's great. I've never heard that before. But, I mean, that's the only way, from a legal standpoint, that I think your argument would have merit because, as Justice Hoffman said, these personal comfort cases that we've been faced with all involve identifiable employer's premises. Well, I don't think that's necessarily true, Your Honor. What's not true? I was going to speak to that. Obviously, traveling employees are... It's not a personal comfort issue. No, it's not. It's not the question or answer. Yeah. Give us the name of the case in the personal comfort document was applied when it was off the employer's premises. I don't have the full case citations with me, but they're actually going to be addressed tomorrow when I'm going to be back up here in front of you. The Robinson case, the Cox case, the Telkin case... And those are personal comfort cases? Yes. And they were off premises? Yes, they were. Where were they? Where was the injury? They were all traveling employees. No, no, no, no, no. Traveling employee personal comfort is entirely different. It has nothing to do with this. This is not a traveling employee. A traveling employee, any injury to that person from the time they leave their house until the time they get back is compensable. It's not based on personal comfort. It's based on the fact that their job takes them away from the resident. So, I'm looking for a personal comfort case. With all due respect, Your Honor, she essentially was forced to become a traveling employee because she was supposed to go away from an employer's premises. They were construing Denny's property. It's not to do her job. Not to do her job. No, no, no. It's a bad argument. Personal comfort is personal. Right. Okay, so let's just kind of restrict ourselves to like a box that has no restroom. But there's a restroom through a door that turns out to be a public restroom. Do we have anything that's called personal comfort in that basic situation? It appears to me, and Justice Hoffman was saying in the cases in his research, all involved inside the box is a restroom that the employee can use that's only being used by the employees. Okay. I think in that particular context, you'd probably be correct that all those cases would be on the employer's premises. Okay. Again, that's why this case is so unusual, and that's why the commission, I think, found the way that they did is because there are not many places where an employee is forced to go outside the confines of their employer's premises to use a restroom. Then why couldn't you argue that it became a condition of employment? If you have to go to the bathroom and you have to leave the employer's premises, doesn't that become a condition of the employment? I would agree. But you argue and you solicit. Well, that's the basis that I have to defend based on the commission's decision, but I would agree with that. I think that if you don't find that this was an increased risk according to the control risk, I think pretty clearly this is an employment-related risk. But you never argued it below? I think that we did. We honestly did. Did Denny's have anything to do with making these restroom facilities available to its employees, or did it merely happen to be restrooms in Flying J that were adjacent to Denny's? The testimony from my client and the two witnesses were that those were the restrooms that were available to Denny's employees to use. Well, I think your testimony was that all customers and employees at Denny's use those public restrooms. But my question was, did Denny's have any arrangement so that its restrooms could be used by its employees, or did they just go into the restroom like any other member of the general public? They essentially testified that they had permission to use either restroom. They had permission to use either of the restrooms that were both operated and maintained. Who gave them that permission? Flying J, right? Flying J, I presume. But do you see how important it might be to have someone testify that when we asked our supervisor, whatever, or when we found there was no restrooms, we were directed to, which might... That's me. Nice to meet you. You were directed to use the restrooms at Denny's. Is there anything in the record that would say that? I could see how in retrospect, hindsight being 20-20, I would love to have that testimony, but I don't think that at the time, and in the normal course of operating your business, you're thinking about that. If you're Denny's employees, I don't know that you are thinking about having to ask permission from Flying J to use their restrooms because those are the only restrooms in the building that you have available to you. We don't care about Flying J. We care about whether the employer had any directive to the employee. Denny's employer, claimant and employee at Denny's, was directed to, if you have to use the restroom, you go and use the restrooms at Flying J. Sure. And the testimony was, as I already kind of summed up, that they were free to use either of those. Being free to use is not under the direction of control. The answer is they weren't being directed, right? They weren't directed to use that particular restroom over there. Were they directed to use any restroom? I mean, just some direction. Just a different view of that. Were they restricted by their employer from leaving the building, being Denny's and Flying J, to go off the premises completely outside of the building and use a different restroom? Were they restricted from doing that? Your Honor, there's no testimony on where they were going to go. Let me ask you a question. Was there any testimony that should have been presented where they couldn't use the Flying J adjacent to Denny's, how far was the nearest bathroom? Because if it's five to ten miles away, it's a little different. I can tell you... Well, he said restricted. I'm not talking about anything in that area. Sure. Your Honor, it's not on the record, but I can tell you from personal knowledge, I live not that far from there, and there's not much in the area. You'd have to go quite a bit of ways to find a restroom. You would say yours is the record, but... Thank you, Your Honor. So, a little disclosure on that. The Illinois Telephone Company case that Mr. McGrady discussed with you, I just wanted to discuss that for a few minutes and kind of discuss the distinctions, I think, that are made between that case and this case. Again, I think the manifesto or the evidence standard is something appropriate to keep in mind, because in that case, it was the commission's determination that the claim wasn't compensable and that was ultimately upheld by the redeeming courts, and that's the same situation, obviously, that we have here. The commission made those factual inferences that the claim was compensable. And in that case, the claimant in that case testified she wasn't required to use any particular entrances or exits and admitted using entrances and exits other than the ones she was using when she was injured. So, Ms. Pearson testified that this was the restroom that she generally used. So, I think that's an important distinction, and again, we've already covered, I think, quite a bit that she was one of those who either wanted those two restrooms on the premises. Did you say in that case that he had cited there was more than one exit to the building? Or just one exit to the building? In the Illinois case? Yes. Exit or exits? Yes. She admitted using entrances and exits other than the ones she was using when she was injured. So, there there was multiple. There were multiple in that case. I think that's an important distinction. In this case, if I remember correctly, there are two different bathrooms that you can use, 20 feet outside Denny's, 50 feet outside Denny's, and in each of the women's restrooms there were five to six stalls to choose from in each of those. So, up to 12 different stalls that could have been used. Right, that's correct. And she chose to use the one closest to... The handicapped one because it was bigger. Sorry? And the handicapped stall in that particular closer restroom facility because it was bigger. Right, exactly. So, I think that's also important too because she's a waitress, she's negative, she wants to get back to obviously doing that so she can earn more money. And I think that's important that also that she go around and sometimes she used this restroom that was closest to where Denny's was. Well, so what kind of risk was she exposed to? I think she was exposed to a risk directly associated with her employment and I believe she was also exposed to risks that were greater than the general public. I think those were all risks that she faced that day and I agreed with the commission that those risks were qualitative and quantitative in nature. So, you can't have... Okay, under our traditional analysis you can't combine them. Right. Which one out of the three? Because you're muddling it all up. You're conflating them. Conflating them, yes. It's illegal. Well, she indicated she was defending the commissioners point. Right. You're arguing these in the alternative. Correct. Based on what we've posed. Correct. And I think it also depends on whether you find that this occurred on her employer's premises. Because, again, I think it was on her employer's premises. Well, you had the obligation to represent the claimants. What was your theory? What risk? What risk? I mean, that's... I think this is off the employer's premises. They didn't have anything to do with maintaining this area. That's why I think she was exposed to a greater risk qualitatively and quantitatively. That's called a neutral risk. Right. So, it's a neutral risk but she was exposed to the risk greater than the general public. And that was the way you analyzed your case and proceeded on that basis and presented evidence to establish that. Correct. And what evidence did you present to establish that? Because that was your theory. It's kind of what we've been discussing already. Well, give me a summary. I'm a simple guy. Sure. Absolutely. So, the fact that her employer does not have a bathroom office premises in Denny's that she can use and she has to travel away from that area to go use the bathroom. That's something that not a lot of people have to do in their employment. So, again, that's something the commission also... And that really doesn't go to neutral risk but go ahead. What is there quantitatively or qualitatively that makes this a compensable neutral risk? Sure. I think I'm... I feel like we've kind of gone round and round with this but the fact that they essentially as the commission put it outsourced the safety because they didn't have a bathroom on their premises that she could use. And that's something that they looked at and I think that was appropriate for them to do. She also enforced her employees to leave the employer's premises. They're exposed. They're presumed to be exposed to greater risks because of the fact that the employer is not controlling the areas in which they are. Let's try and pin one thing down. You won before the arbitrator, correct? You lost before... I'm sorry. You lost. You took an appeal to the commission. Did you before the commission argue the alternative theories that not only was it a neutral risk violation but it was also an employment risk because they had, as a condition of employment, leave the premises. Were you all there in the neutral risk argument? I believe that we did discuss that as well. I don't want to tell you... It's important. If you were arguing the employment risk for the first time on appeal, you'd have a problem because you never raised it. Sure. I would agree. It's never come up until this point. None of the other courts have raised that issue or the arguments that we've had before in the commission. Your questions were very clearly focused on a neutral risk analysis. Thank you. Thank you very much. Thank you. Would you confirm that that you never argued the employment risk before the commission? Your Honor, on the top of my head, I believe most of the arguments and analysis was based on the neutral risk. But most of them, did you ever raise that though? I cannot say for certain, to be honest. You know why I'm asking because you can't raise for the first time on appeal something you don't understand. I understand. My understanding is that you didn't... You have no recollection. I just don't want to say something for certain. Well, you have no recollection. Well, I mean, I recall that neutral risk... Well, you have no recollection as to the answer to it. Yes, Your Honor. Except for one problem. She's an apple-eater. She can argue anything she wants in support of the judgment below. And Judge, the only thing I would say on that front, and I won't concede to that, certainly could be an argument you made, but I think clearly in this case, the fact that it's under a personal comfort doctrine, which I told you you mentioned that it's a personal comfort doctrine. It's not an important religion. So, you know, just going to the restroom itself takes it necessarily out of a risk that's available to the employer. And going to the restroom in any risk-facing kind of situation could certainly be looked at and initially looked at as a neutral risk to a certain degree than it is. And in that situation, the analysis then becomes whether or not there's a greater risk. And there are a couple points that I just want to address that have been made by Ms. Rich in her time up here. She talked about the ill-known volatile employment case. And again, that case is not exactly the situation that we have here, but it's very similar. And she said that one distinction is that in that case, the employee was not directed to which exit to leave. But that isn't really a distinction because in this case also, there are multiple exits. Just like in that case, there were multiple exits. And I really judge you guys because you could wrap this up. There were multiple stalls within those bathrooms that she could choose to use. Just like in the employment telephone company case, where there were multiple exits that she could use. The one that she used in that case happened to be the one that she said to die. Just like the one that the employee in this case used to stall happened to be the one that she used. Can I ask a question? Let's assume that in this case, if she didn't go to the bathroom of a flying J adjacent to Denny's, the nearest bathroom was ten miles away. Is it reasonable to expect that Denny's say, hey, it's not our fault that the nearest bathroom is ten miles away? We know if he's got to go to the bathroom, if you've got to go ten miles, that's your problem. Would that fly? Your Honor, I certainly think that creates a bigger difference between the fact that the room we have here may create a situation where a complex accident could be found in that case. In that case... Which would mean that we'd become an employment risk theoretically. In addition to employment, you've got to drive ten miles. Well, in that case, if I can refer back to what Ms. Rich had mentioned about street risk, at that point, you'd argue that the street risk doctrine may apply because this individual is required to actually face the street when going to the restroom in order to fit into the personal comfort doctrine. That isn't the case here. The case is that they might be off the direct controlled area thing, but it's not off-premises in that they're not leaving the building. This is a restroom that's strictly linked. They didn't have to go outside or something. Yes. And there were multiple factors. And it was something that was open to the public. The fact that the high-risk areas are high-risk areas, you can't necessarily change that analysis. What's your understanding of the street risk doctrine? Well, I think when someone as part of their employment faces the street and has to leave the premises, that there is a greater risk in any potential accident that may occur. Well, here we have is going to the bathroom part of their employment. On the street risk doctrine? I'm just asking that. You said street risk doctrine, when someone as part of their employment is exposed to the risk of a street, was this part of her employment? Going to the bathroom? That's what my question was. I think it was not incidental to her employment duties, therefore I do not believe that it was incidental. So why were we talking about street risk doctrine? It was just something I was talking about. If she had to leave the premises and drive 10 miles, is that part of her employment? I think the personal comfort doctrine would apply in that. So any time you're engaged in an act, any time you're in your employment or whatever, you're engaged in an act of personal comfort, in the course of pulling down the bench or whatever and driving  car, or the drill press, and you stop that when you're going to engage in an act of personal comfort, you're in  of your employment. I believe that that is the principle. If using a bathroom isn't a personal comfort, what would it be? I agree. I agree. And therefore, your legal legal admission decision is against the statute. Thank you counsel both for your arguments in this matter. We put under excitement the written disposition shall issue.